IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CR-50-FL

| UNITED STATES OF AMERICA | |
|---|---|
| v. | ORDER AND MEMORANDUM AND RECOMMENDATION |
| LEDGER LYNN HAMMONDS, JR., | |
| Defendant. | |

This matter comes before the court on Defendant Ledger Lynn Hammonds, Jr.'s motion for production of evidence; motion to suppress and for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978); motion for a notice of intention to use 404(b) evidence; motion for release of perjured information to Grand Jury; motion for leave to file further pretrial motions; and motion to sequester witnesses. [DE-41, -42, -44, -45, -46, -47]. The Government responded in opposition to the motion to suppress and for a *Franks* hearing. [DE-50]. For the reasons that follow, the motion for production of favorable evidence and impeachment evidence [DE-41] is allowed in part and denied in part; the motion for a *Franks* hearing [DE-42] is denied; it is recommended that the motion to suppress [DE-42] be denied; the motion for notice of intention to use 404(b) evidence [DE-44] is allowed in part and denied in part; the motion for release of perjured information to Grand Jury [DE-45] is denied; the motion for leave to file further pretrial motions [DE-46] is denied; and the motion to sequester witnesses [DE-47] is allowed in part and denied in part.

## I. PROCEDURAL BACKGROUND

A Grand Jury sitting in the Eastern District of North Carolina returned a one-count indictment charging Defendant with possession of a firearm by a convicted felon, in violation of 21 U.S.C. §§ 922(g)(1) and 924(a)(2). [DE-1]. Defendant filed the instant motions, [DE-38, -41,

-42, -44, -45, -46, -47], and the court continued the arraignment until a date to be set no sooner than forty-five days after the court's ruling on the pending motions. [DE-43]. The Government opposes the motion to suppress and for a *Franks* hearing, and the Government did not respond to Defendant's other motions. [DE-50]. The deadline for a response has passed, and the pending motions are now ripe.

## II. STATEMENT OF FACTS

### A. The 2015 Interview

On October 8, 2015, Defendant's uncle, Ronald Hammonds ("Ronald"), was interviewed by Detective Mike Ellis of the Robeson County Sheriff's Department concerning an investigation into animal cruelty. [DE-42-5]. During the interview, Ronald told Detective Ellis that he owned a herd of buffalo and that he had discovered two of them dead in July 2015, one of which had been decapitated. *Id.* at 3:15–22. Ronald told Detective Ellis that although he did not suspect anyone at the time of the incident, the twelve-year-old son of his nephew's brother-in-law admitted to decapitating the buffalo. *Id.* at 5:19–22. Ronald told Detective Ellis further that in September 2015, Ronald had seen someone with a flashlight near his pasture at night, and he heard a gunshot. *Id.* at 10:10–18. During the interview, Ronald first identified Defendant's brother Joshua Hammonds ("Josh") as the culprit, then corrected himself and stated that it was Defendant. *Id.* at 10:16–11:9. Ronald stated that on the evening in question he saw Defendant holding two items, one of which was a flashlight and one of which could have been a rifle, but Ronald admitted he could not see clearly. *Id.* at 11:16–22. According to Ronald, the following day he discovered that one of his buffalo had been shot. *Id.* at 12:14–16.

Several times during his interview with Detective Ellis, Ronald confused Josh's and Defendant's names and corrected himself. *Id.* at 30:21–24, 32:11–14, 34:21–22, 35:23–24, 40:25–

2

41:5. Ronald told Detective Ellis that he had never seen Defendant shoot a firearm but that on one occasion he saw Defendant carry a rifle while riding a horse. *Id.* at 31:2–19. In fact, Ronald told Detective Ellis that he recognized the gun as his and that it had been stolen. *Id.* Ronald also told Detective Ellis that when Defendant entered his property the day prior to the interview, Ronald pointed a gun at Defendant, told him to leave, and fired a shot over his head. *Id.* at 34:1–6. Ronald repeated that he had never seen Defendant shoot a firearm. *Id.* at 35:8–11.

### B. The 2017 Affidavit

On June 27, 2017, Investigator Erich Von Hackney of the Robeson County District Attorney's Office submitted an affidavit requesting a warrant to search Defendant's home. [DE-42-3]. Investigator Von Hackney stated in the affidavit that in 2013, Ronald reported that he suspected Defendant of deer hunting and trespassing on his property. *Id.* at 2. According to the affidavit, Defendant and Josh live near Ronald's property. *Id.* In July 2015, Ronald found that three of his buffalo had been killed, and one had been decapitated. *Id.* According to the affidavit, in September 2015, Ronald reported to the Robeson County Sheriff's Office that he heard a gunshot at night near the back of his pasture in the area where Defendant and Josh live. *Id.* at 2–3. The next day, Ronald found that another buffalo had been killed. *Id.* at 3. Ten days later, Ronald found yet another dead buffalo, and he reported to the Robeson County Sheriff's Office that he witnessed "them" shoot the buffalo. *Id.* When asked who "they" were, Ronald identified Defendant and said that he observed Defendant shoot a pistol. *Id.* In August 2016, Ronald reported that firearms were discharged near the trailer where Defendant and Joshua live. *Id.* In May 2017, Ronald reported that two more buffalo had been killed. *Id.* at 3–4. In June 2017, another buffalo was shot. *Id.* at 4.

Investigator Erich Von Hackney spoke with Ronald in June 2017. *Id.* Ronald said that six

3

or seven years ago, he purchased a rifle, and approximately a year after the purchase, he saw Defendant holding a rifle, and he noticed that his rifle had been stolen. *Id.* Additionally, Ronald's brother, Cordell Hammonds ("Cordell"), lives near his property. *Id.* at 5. One year previously, one of Cordell's cows was shot, and three months previously, Cordell's dog was shot. *Id.* A firearm was once discharged into a house adjacent to Ronald's property. *Id.*

Investigator Erich Von Hackney stated in his affidavit that Katherine Floyd, the Robeson County Animal Cruelty Investigator, told him that she had observed Defendant in possession of a firearm on two occasions. *Id.* at 6. In particular, on or about May 24, 2017, she saw Defendant operate a dirt bike with a firearm in a holster on his right side. *Id.* In September 2015, Floyd saw Defendant riding a horse with a firearm in a hip holster. *Id.*

Investigator Von Hackney stated that based on that information, there was probable cause to believe Defendant had committed the crimes of cruelty to animals and possession of a firearm by a convicted felon. *Id.* at 7. A North Carolina magistrate issued a warrant authorizing a search of Defendant's home. [DE-42-4]. The warrant was executed on June 28, 2017, and a rifle and handgun were seized. [DE-50] at 2.

## III. DISCUSSION

### A. The Motion for a *Franks* Hearing

Defendant requests a *Franks* hearing because the search warrant affidavit contained misrepresentations and omissions. [DE-42] at 8–13. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Supreme Court has interpreted the Fourth Amendment to establish three requirements for warrants: they must (1) be issued by neutral, disinterested magistrates; (2) be supported by probable cause; and (3)

4

particularly describe the place to be searched and the things to be seized. *United States v. Dalia*, 441 U.S. 238, 256 (1979) (citations and quotations omitted). Probable cause is "not defined by bright lines and rigid boundaries[,]" but instead "allows a magistrate to review the facts and circumstances as a whole and make a common sense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[P]robable cause is a flexible, common-sense standard . . . . [that] merely requires that the facts available to the officer would 'warrant a man of reasonable caution'" to believe that evidence of a crime may be discovered and does not require "any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)); *see also Williams*, 974 F.2d at 481. Sufficient information must be presented to the magistrate to allow for the exercise of independent judgment; the magistrate cannot simply ratify the bare conclusions of others. *Gates*, 462 U.S. at 239.

"When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) (citing *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990)). Since probable cause is evaluated through a "totality of circumstances" analysis and based on a person's common sense, great deference is accorded to a magistrate's assessment of the facts before him. *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (citing *Gates*, 462 U.S. at 230; *Blackwood*, 913 F.2d at 142). The court's review is therefore limited to whether there was a "substantial basis for determining the existence of probable cause." *Id.* (quoting *Gates*, 462 U.S. at 239).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court established certain

5

"narrowly-defined circumstances" under which a defendant may attack a facially valid search warrant. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (citing *Franks*, 438 U.S. at 171–72). To demonstrate entitlement to a hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. Additionally, the false information must be essential to the court's determination of probable cause; in other words, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171–72); *see United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000) ("*Franks* thus serves to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause."). The defendant bears the burden of proof, and the court applies a "presumption of validity with respect to the affidavit supporting the search warrant." *United States v. Davis*, No. 5:15-CR-267-FL, 2016 WL 884653, at *6 (E.D.N.C. Mar. 8, 2016) (quoting *Franks*, 438 U.S. at 171).

In addition to specifically identifying the portion of the affidavit claimed to be false and providing reasons for the falsity, the defendant must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008) (quoting *Franks*, 438 U.S. at 171). Allegations of "negligence or innocent mistake are insufficient." *Id.* The defendant's showing "must be more than conclusory" and accompanied by "a detailed offer of proof." *Franks*, 438 U.S. at 171. Thus, a defendant's burden to demonstrate entitlement to a *Franks* hearing is "a heavy one to bear." *Tate*, 524 F.3d at 454.

6

When relying on omitted facts from a search warrant affidavit to show its deceptiveness rather than an affirmative false statement, a defendant faces an even greater burden. *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011) (citing *Tate*, 524 F.3d at 454–55). The Fourth Circuit has recognized that an affidavit drafted by non-lawyers submitted in support of a search warrant application "cannot be expected to include . . . every piece of information gathered in the course of an investigation"; resultingly, any decision to omit information is "intentional" in that it was done knowingly. *Tate*, 524 F.3d at 455 (quoting *Colkley*, 899 F.2d at 300). However, "*Franks* clearly requires defendants to allege more than 'intentional' omission in this weak sense." *Colkley*, 899 F.2d at 301. "To obtain a Franks hearing the defendant must show that the omission is the product of a 'deliberate falsehood or of reckless disregard for the truth.'" *Id.* (quoting *Franks*, 438 U.S. at 171). The information omitted from the warrant affidavit must also be material. *Id.* "For an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause for arrest." *Id.* (citation omitted).

### 1. The Misrepresentations and Omissions from Investigator Von Hackney

First, Defendant requests a *Franks* hearing because Investigator Von Hackney's affidavit does not contain certain pieces of information from Ronald's October 2015 interview. [DE-42] at 10–12. Defendant notes several misrepresentations or omissions: (1) the affidavit states that Ronald claims to have seen Defendant shoot a pistol at the pasture in September 2015, but multiple times in Ronald's interview, he said that he did not see Defendant shoot a firearm; (2) the affidavit does not mention that Ronald confused Defendant's and Josh's names during the interview on several occasions; (3) it does not mention the incident where Ronald was arrested for communicating threats and assault by pointing a gun at Defendant; and (4) it does not state that someone else admitted to decapitating one of the buffalo. *Id.* at 10–11. Defendant contends that

7

those pieces of information undercut Ronald's credibility, and because the warrant was largely based on Ronald's statements, his reliability was material to a determination of probable cause. *Id.* at 12.

However, Defendant does not make the requisite showing that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth. *See Colkley*, 899 F.2d at 301. He merely alleges that Investigator Von Hackney "apparently chose to keep [the information] from the issuing judge either intentionally or recklessly knowing that it would have given the judge pause and nullified the probable cause sought." [DE-42] at 11. Defendant argues that based on Investigator Von Hackney's experience, he should have known the omitted information was material to a probable cause determination and that the issuing judge would have wanted to know of the inconsistencies. *Id.* at 12. However, those allegations are bare and conclusory. *See Franks*, 438 U.S. at 171. Defendant asks the court to assume that Investigator Von Hackney knew that the information would likely negate probable cause and "apparently chose" to keep the information secret. [DE-42] at 11–12. Defendant does not make a "detailed offer of proof" that Investigator Von Hackney intentionally or recklessly omitted information from the October 2015 interview, and without more than bare and conclusory allegations, Defendant cannot carry his heavy burden. *See Franks*, 438 U.S. at 171; *Tate*, 524 F.3d at 454; *United States v. Marion*, No. 5:11-CR-338-D, 2012 WL 2838905, at *2 (E.D.N.C. July 10, 2012) (holding that a defendant failed to make the requisite detailed offer of proof because he "provided no evidence that the affiant omitted these details to mislead the magistrate."), *aff'd*, 547 F. App'x 283 (4th Cir. 2013).

### 2. The Misrepresentations and Omissions from Katherine Floyd

The affidavit states that Katherine Floyd observed Defendant wearing a holster containing

8

a firearm on or about May 24, 2017. [DE-42-3]. Defendant contends that the statement "cannot be true" because "[t]here are numerous individuals who are aware that Defendant was working out of state until the last week of May and therefore could not have been seen by Katherine Floyd." [DE-42] at 13. Defendant submits three affidavits. [DE-42-8, -9, -10]. In one, Shawn Freeman states that Defendant "returned to North Carolina from New York at the end of May 2017." [DE-42-8] at 1. In another, Albert Locklear states that he was working with Defendant in New York and that they returned to North Carolina "on or about May 28, 2017," and Defendant "was not in North Carolina on May 24, 2017." [DE-42-9] at 1. In the third affidavit, Nicoya Dial echoes Albert Locklear's statements. [DE-42-10].

At most, Defendant's affidavits show a four-day discrepancy in the date Ms. Floyd saw Defendant. Ms. Floyd reported that she saw Defendant in North Carolina on or about May 24, and the affidavits state that Defendant returned to North Carolina on or about May 28. Defendant contends that because of the discrepancy in the reported dates, "Floyd's statement could not be true," and "a substantial showing of intentionality and/or recklessness has been made that her false statement should not have been included." [DE-42] at 13.

Defendant's argument is again conclusory. Assuming that Katherine Floyd reported the incorrect date, Defendant has done nothing to show that the error was intentional or made with reckless disregard for the truth. *See Colkley*, 899 F.2d at 301. Additionally, Defendant alleges that "the statement is clearly material as it places Defendant in possession of a firearm." [DE-42] at 13. However, the court sets aside only the material shown to be false, and it then considers whether the affidavit nonetheless supports probable cause. *See Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171–72). Defendant has submitted evidence showing that the date Ms. Floyd saw Defendant was incorrect. Even if the court were to strike the erroneous date, Ms. Floyd's

9

statement that she observed Defendant in possession of a firearm would remain, and the affidavit could support probable cause. *See id.* Accordingly, no *Franks* hearing is required, and Defendant's motion for a *Franks* hearing is denied.

**B.     The Motion to Suppress**

Defendant moves to suppress all evidence derived from a search of his home because the information contained in Ms. Floyd's statements was stale could not support probable cause. [DE-42] at 14. Ms. Floyd stated she observed Defendant with a gun in September 2015, nineteen months before the affidavit was submitted, and on May 24, 2017, thirty-four days before the affidavit was submitted. [DE-42, -42-3].

"There is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). "A valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *Id.* at 1335–36 (quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)). However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. . . . Rather, [the court] must look at all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *McCall*, 740 F.2d at 1336. "The information in the warrant is not stale if the evidence sought is 'intrinsically likely to remain at the location where it was originally observed.'" *Id.* at 1337. The ultimate concern of the court when confronted with an issue of staleness is whether "the facts alleged in the warrant furnish probable cause to believe, at the time the search was actually conducted, that evidence of criminal activity was located at the premises searched." *Id.* at 1336.

10

Considering the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized, Ms. Lloyd's observation of Defendant in possession of a firearm on May 24, 2017 was not stale when the warrant was issued on June 27, 2017, and it could support a finding of probable cause. *See United States v. Comstock*, 412 F. App'x 619, 623 (4th Cir. 2011) (quoting *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008) ("Information that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time.")). The Fourth Circuit has held that information regarding possession of a firearm is not stale despite even longer passages of time. *See Comstock*, 412 F. App'x at 623 (eleven weeks). Moreover, Investigator Von Hackney's affidavit sets forth information that Defendant possessed a firearm over a substantial period of time; in particular, Ms. Lloyd's two observations of Defendant with a firearm were in 2015 and 2017. The fact that Defendant was observed with a firearm more than once supports an inference that a firearm would be found in his home in June 2017. *See United States v. Farmer*, 370 F.3d 435, 439 (4th Cir. 2004) (noting that continuous possession of firearms diminishes the importance of the passage of time); *United States v. Collins*, No. 7:09-CR-75-FL, 2009 WL 4827420, at *7 (E.D.N.C. Dec. 14, 2009) ("evidence of prior possession supports an inference of more recent possession. Specifically, the multiplicity of the prior instances, the familiarity of defendant with firearms suggested by his involvement with two different types of guns, the significant span of years over which the instances occurred, and the recency of the last two prior instances . . . all suggest a pattern of gun possession by defendant that was ongoing and would continue in the future."). Ms. Lloyd's statement that she saw Defendant with a firearm on May 24, 2017 was not stale when the warrant was issued on June 27, 2017, and it could support a finding of probable cause. Accordingly, it is recommended that Defendant's motion to suppress be denied.

11

## C. The Motion for Production of Favorable Evidence and Impeachment Evidence

Defendant requests that the Government produce all favorable and impeaching evidence. [DE-41] at 1. Specifically, Defendant asks that Government produce personnel files of government witnesses. *Id.* Defendant contends that the files may contain impeaching evidence because two agents working on Defendant's case have since been terminated for misconduct. *Id.* The Government has not responded.

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, "the government is required to disclose evidence that is both favorable to an accused and material to either guilt or punishment." *United States v. Newby*, 251 F.R.D. 188, 190 (E.D.N.C. 2008) (internal quotations and citations omitted). This requirement includes the disclosure of evidence that could potentially be used to impeach or discredit a government witness, *Giglio v. United States*, 405 U.S. 150, 154 (1972), encompassing all plea agreements and promises of leniency, immunity, or other similar inducements to testify that have been given to witnesses, and the criminal records of witnesses, *United States v. Stroop*, 121 F.R.D. 269, 274 (E.D.N.C. 1988).

In the absence of an allegation that the agents' misconduct was related to Defendant's own case, the personnel files are not material; thus, they are not subject to disclosure under *Brady*. *See United States v. Robinson*, 627 F.3d 941, 952 (4th Cir. 2010) ("[I]t is one thing to require prosecutors to inquire about whether police have turned up exculpatory or impeachment evidence during their investigation. It is quite another to require them, on pain of a possible retrial, to conduct disciplinary inquiries into the general conduct of every officer working the case."). The Ninth Circuit adopted a rule in which the Government is required to examine personnel files for *Brady* material upon request by a defendant. *United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1991). However, other circuits, including the Fourth, have declined to adopt the rule and leave the

12

burden on the defendant to allege how the files may be material to his case. *United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997) (denying a motion to compel discovery of personnel files because "Quinn has offered no support for his contention that the personnel files might contain information of significance to his case"); *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992) (denying a motion because "Mr. Driscoll offered no support for his contention that personnel files might contain information important to his case"), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999); *United States v. Hoffman*, 869 F.2d 595, 595 (4th Cir. 1989); *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985) ("Andrus was not entitled to the personnel files of the law enforcement witnesses without even a hint that impeaching material was contained therein"); *United States v. Vanover*, No. 115-CR-97-MOC-DLH, 2016 WL 2943818, at *7 (W.D.N.C. May 20, 2016) ("Courts in [the Fourth C]ircuit have routinely rejected requests [to compel discovery of law enforcement personnel files], particularly where there is no specificity as to the information requested") (collecting cases).

Here, Defendant does not allege that the agents' misconduct was related to his case. Accordingly, he has not alleged that the personnel files are material to his guilt or punishment and must be disclosed pursuant to *Brady*. To the extent the Government either possesses or discovers favorable or impeaching material that has not already been produced, it must produce such material to Defendant no later than seven days (one week) prior to trial. *See United States v. Mayhew*, No. 5:13-CR-199-F-2, 2014 WL 185881, at *1 (E.D.N.C. Jan. 16, 2014) (ordering disclosure of *Brady* evidence seven days prior to trial) (citing *United States v. Graham*, 468 F. Supp.2d 800, 802 (E.D.N.C. 2006) (holding that while disclosure of Rule 404(b) information three days prior to trial would not be unreasonable, disclosure one week prior to trial would be sufficient)). However, the Government is not required to examine or disclose the personnel files absent an indication by

13

Defendant that the files are material to his case. Defendant's motion for production of evidence is therefore allowed in part and denied in part.

### D. The Motion for Notice of Intention to Use 404(b) Evidence

Defendant requests that the Government disclose the substance of any evidence it intends to offer at trial pursuant to Rule 404(b) of the Federal Rules of Evidence. [DE-44]. The Government has not responded.

In a criminal case, Rule 404(b) requires that upon request by the accused, the prosecution must "provide reasonable notice of the general nature of any [Rule 404(b)] evidence" it intends to introduce at trial and "do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(2). "The rule does not, however, entitle the defendant to the discovery of the 404(b) evidence itself." *United States v. Ross-Varner*, No. 5:14-CR-206-F-6, 2015 WL 1612045, at *10 (E.D.N.C. Apr. 9, 2015) (citing *Graham*, 468 F. Supp. 2d at 802 (noting that Rule 404(b) does not require the government to identify "the tangible evidence upon which [it] may rely to introduce the Rule 404(b) evidence")).

Defendant's request for notice of the general nature of any Rule 404(b) evidence the Government intends to introduce at trial is allowed and this notice shall be provided at least one week (seven days) prior to trial. *See United States v. Renteria*, No. 7:12-CR-37-FA-10, 2014 WL 2616630, at *4 (E.D.N.C. June 12, 2014) ("Even where the charges are serious, providing 404(b) notice one week prior to trial may be sufficient.") (citing *Graham*, 468 F. Supp. 2d at 802; *United States v. Swain*, No. 4:07-CR-62-D, 2008 WL 717720, at *1 (E.D.N.C. Mar. 17, 2008)). However, Defendant is not entitled to the substance of any Rule 404(b) evidence. Accordingly, Defendant's motion for notice of intent to use Rule 404(b) evidence is allowed in part and denied in part.

E.  **The Motion for Release of Perjured Information to Grand Jury**

Defendant seeks pre-trial disclosure of any information presented to the Grand Jury that the Government now believes is perjured. [DE-45]. The Supreme Court has recognized a "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *Bast v. United States*, 542 F.2d 893, 894 (4th Cir. 1976) (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 681 (1958)); *see also* Fed. R. Crim. P. 6(e)(2) (establishing general rule of secrecy for grand jury proceedings). "This 'indispensable secrecy of grand jury proceedings' . . . must not be broken except where there is a compelling necessity. There are instances when the need will outweigh the countervailing policy. But they must be shown with particularity." *Id.* (quoting *Procter & Gamble*, 356 U.S. at 682). Therefore, a showing of "particularized need" must be made to justify the release of information from a grand jury proceeding. *Id.* at 896 (citing *United States v. Chase*, 372 F.2d 453, 466 (4th Cir. 1967); *United States v. Bryant*, 364 F.2d 598, 600 (4th Cir. 1966); *United States v. Johnson*, 337 F.2d 180, 197 (4th Cir. 1964)).

In his motion, Defendant has simply asked the court to order the Government to comply with its discovery obligations, and he has not alleged a particularized need, i.e., that he believes perjured information was actually presented to the Grand Jury in his case and that it was material to the return of his indictment. [DE-45]. The Government appears to be aware of its discovery obligations, and the court does not issue prophylactic orders reminding the Government to fulfill its responsibilities when there is no allegation that it has failed to do so. *See United States v. Smith*, No. 7:17-CR-15-1H, 2017 WL 5760870, at *3 (E.D.N.C. Nov. 28, 2017) (denying similar motion); *United States v. Whitted*, No. 5:15-CR-372-1H, 2017 WL 2082922, at *2 (E.D.N.C. May 15, 2017) (same). Defendant is entitled to the grand jury testimony of Government witnesses *after* direct examination at trial, pursuant to the Jencks Act. 18 U.S.C. § 3500(e)(3); *see also United States v.*

*Silva*, 745 F.2d 840, 845 (4th Cir. 1984); *United States v. Williams*, No. 7:07-CR-59-D, 2007 U.S. Dist. LEXIS 63605, at *7, 2007 WL 2480316, at *3 (E.D.N.C. Aug. 27, 2007) (denying request for early disclosure of grand jury testimony of prospective government trial witnesses pursuant to the Jencks Act). Accordingly, Defendant's motion for early release of information tendered to the Grand Jury is denied.

### F. The Motion for Leave to File Further Pretrial Motions

Defendant requests leave to file additional motions after the motions deadline has passed. [DE-46]. In support, Defendant contends that further motions may be necessary in response to the Government's or this court's actions on his other motions, or that new issues may be raised by newly discovered evidence "or other such circumstances." [DE-46]. The scheduling order in this case set the deadline for filing motions as July 5, 2019. [DE-43]. That deadline has already been continued four times at Defendant's request. [DE-30, -32, -34, -43]. Defendant now requests an indefinite extension of time to file motions. The court routinely denies such requests when the defendant fails to allege good cause. *See United States v. Montoya*, No. 7:10-CR-30-1-F, [DE-64] at 3–4 (E.D.N.C. May 20, 2010); *United States v. Ramirez*, No. 7:05-CR-40-FL, [DE-35] at 7 (E.D.N.C. July 27, 2005). Here, Defendant merely speculates that additional motions may be necessary, and such speculation is insufficient to amount to good cause. *See Montoya*, No. 7:10-CR-30-1-F, [DE-64] at 4. Accordingly, Defendant's motion for leave to file further pretrial motions is denied.

### G. The Motion to Sequester Witnesses

Defendant seeks a court order sequestering all Government witnesses during the trial. [DE-47]. The Government has not responded.

Rule 615 of the Federal Rules of Evidence provides that "a[t] a party's request, the court

must order witnesses excluded so that they cannot hear other witnesses' testimony." Thus, sequestration of witnesses is mandatory if requested. *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986). Each witness is prohibited from discussing previous trial testimony with any other witness who has yet to testify at trial. *United States v. Rhynes*, 218 F.3d 310, 317 (4th Cir. 2000) (en banc) ("Sequestration requires that witnesses not discuss the case among themselves or anyone else, other than the counsel for the parties.") (quotations and citations omitted). Excepted from sequestration are (1) the parties themselves, (2) the designated representative of an entity, (3) a person whose presence is shown by a party to be essential to the presentation of the case, or (4) a person authorized by statute to be present. Fed. R. Evid. 615(a)–(d). A government investigative agent falls within the second exception, even if the agent is expected to testify; however, only one agent may be exempted from sequestration under this exception. *Farnham*, 791 F.2d at 334 (citing *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir. 1983)); *see also United States v. Lovin*, No. 7:06-CR-45-BO-3, 2007 WL 167454, at *2 (E.D.N.C. Jan. 18, 2007) (denying the government's request to exempt from sequestration agents from three different government agencies who jointly conducted the investigation).

Defendant's motion to sequester is allowed, with the exception of one case agent designated by the Government. The Government shall designate its case agent at the beginning of the trial. *See United States v. Howard*, No. 5:12-CR-9-D, 2012 WL 2525625, at *3 (E.D.N.C. June 29, 2012) (allowing the defendant's request for sequestration and requiring the government to designate the representative case agent at the beginning of the trial). Accordingly, Defendant's motion for sequestration [DE-47] is allowed in part and denied in part.

### IV. CONCLUSION

For the reasons stated herein:

1. The motion for production of favorable evidence and impeachment evidence [DE-41] is allowed in part and denied in part;

2. The motion for a *Franks* hearing [DE-42] is denied;

3. It is recommended that the motion to suppress [DE-42] be denied;

4. The motion for notice of intention to use 404(b) evidence [DE-44] is allowed in part and denied in part;

5. The motion for release of perjured information to Grand Jury [DE-45] is denied;

6. The motion for leave to file further pretrial motions [DE-46] is denied; and

7. The motion to sequester witnesses [DE-47] is allowed in part and denied in part.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 13, 2019** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within 14 days of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without

such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

So ordered, this the 30th day of August, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge