IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CR-050-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEDGER LYNN HAMMONDS, JR., | ) | ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress and motion for <u>Franks</u>[1] hearing (DE 42). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Robert B. Jones, Jr., entered order and memorandum and recommendation ("M&R"), wherein the magistrate judge denied defendant's motion for <u>Franks</u> hearing and recommended that the court deny defendant's motion to suppress (DE 51). Defendant timely filed an objection to the M&R and order on <u>Franks</u> hearing. (DE 54). The government did not respond to defendant's objection, and the time to do so has expired. In this posture, the issues raised are ripe for ruling. For the following reasons, the court adopts the M&R and denies defendant's motion.

### STATEMENT OF THE CASE

On March 14, 2018, the grand jury returned a one count indictment, charging defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). On June 4, 2019, defendant filed the instant motion to suppress all evidence derived from

---

[1] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

a search of his residence and additionally to request a hearing to examine whether the search warrant is valid under Franks. In support of the instant motion, defendant relies upon the following: 1) defendant's indictment, 2) search warrant affidavit, 3) search warrant, 4) charges filed against Ronald Hammonds ("Ronald"), 5) transcript of Ronald's interview, 6) charges filed against defendant, 7) affidavit from Shawn Freeman ("Freeman"), 8) affidavit from Albert Locklear ("Locklear"), and 9) affidavit from Nicoya Dail ("Dail").

On August 30, 2019, the magistrate judge entered an order and M&R, denying defendant's request for a Franks hearing, and recommending that defendant's motion to suppress be denied. In objection to the M&R, Defendant maintains that all evidence from the search should be suppressed because law enforcement either intentionally or recklessly omitted and misrepresented material information in the search warrant affidavit.

**STATEMENT OF FACTS**

The background facts as set forth in section II of the order and M&R, as relevant to the instant motion, are repeated below:

> On October 8, 2015, defendant's uncle, [Ronald], was interviewed by Detective Mike Ellis of the Robeson County Sheriff's Department concerning an investigation into animal cruelty. (DE 42-5). During the interview, Ronald told Detective Ellis that he owned a herd of buffalo and that he had discovered two of them dead in July 2015, one of which had been decapitated. Id. at 3:15-22. Ronald told Detective Ellis that although he did not suspect anyone at the time of the incident, the twelve-year-old son of his nephew's brother-in-law admitted to decapitating the buffalo. Id. at 5:19-22. Ronald told Detective Ellis further that in September 2015, Ronald had seen someone with a flashlight near his pasture at night, and he heard a gunshot. Id. at 10:10-18. During the interview, Ronald first identified defendant's brother Joshua Hammonds ("Josh") as the culprit, then corrected himself and stated that it was defendant. Id. at 10:16-11:9. Ronald stated that on the evening in question he saw defendant holding two items, one of which was a flashlight and one of which could have been a rifle, but Ronald admitted he could not see clearly. Id. at 11:16-22. According to Ronald, the following day he discovered that one of his buffalo had been shot. Id. at 12:14-16.

Several times during his interview with Detective Ellis, Ronald confused Josh's and Defendant's names and corrected himself. Id. at 30:21-24, 32:11-14, 34:21-22, 35:23-24, 40:25-41:5. Ronald told Detective Ellis that he had never seen defendant shoot a firearm but that on one occasion he saw defendant carry a rifle while riding a horse. Id. at 31:2-19. In fact, Ronald told Detective Ellis that when Defendant entered his property the day prior to the interview, Ronald pointed a gun at Defendant, told him to leave, and fired a shot over his head. Id. at 34:1-6. Ronald repeated that he had never seen defendant shoot a firearm.

On June 27, 2017, Investigator Erich Von Hackney ["Von Hackney"] of the Robeson County District Attorney's Office submitted an affidavit requesting a warrant to search defendant's home. (DE 42-3). [Von Hackney] stated in the affidavit that in 2013, Ronald reported that he suspected defendant of deer hunting and trespassing on his property. Id. at 2. According to the affidavit, defendant and Josh live near Ronald's property. Id. In July 2015, Ronald found that three of his buffalo had been killed, and one had been decapitated. Id. According to the affidavit, in September 2015, Ronald reported to the Robeson County Sheriff's Office that he heard a gunshot at night near the back of his pasture in the area where defendant and Josh live. Id. at 2-3. The next day, Ronald found that another buffalo had been killed. Id. at 3. Ten days later, Ronald found yet another dead buffalo, and he reported to the Robeson County Sheriff's Office that he witnessed "them" shoot the buffalo. Id. When asked who "they" were, Ronald identified defendant and said that he observed a defendant shoot a pistol. Id. In August 2016, Ronald reported that firearms were discharged near the trailer where defendant and Joshua live. Id. In May 2017, Ronald reported that two more buffalo had been killed. Id. at 3-4. In June 2017, another buffalo was shot. Id. at 4.

[Von Hackney] spoke with Ronald in June 2017. Id. Ronald said that six or seven years ago, he purchased a rifle, and approximately a year after the purchase, he saw defendant holding a rifle, and he noticed that his rifle had been stolen. Id.

[Von Hackney] stated in his affidavit that Katherine Floyd ["Floyd"], the Robeson County Animal Cruelty Investigator, told him that she had observed defendant in possession of a firearm on two occasions. Id. at 6. In particular, on or about May 24, 2017, she saw defendant operate a dirt bike with a firearm in a holster on his right side. Id. In September 2015, Floyd saw defendant riding a horse with a firearm in a hip holster. Id.

[Von Hackney] stated that based on that information, there was probable cause to believe defendant had committed the crimes of cruelty to animals and possession of a firearm by a convicted felon. Id. at 7. A North Carolina magistrate issued a warrant authorizing a search of defendant's home. (DE 42-4). The warrant was executed on June 28, 2017, and a rifle and handgun were seized. (DE 50 at 2).[2]

---

[2] Page numbers in citations to documents in the record specify the page number designated by the court's

(Order and M&R (DE 51) at 2-4).

## DISCUSSION

A.   Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.   Analysis

In his objection, defendant argues the magistrate judge erred in determining that he was not entitled to a Franks hearing.[3] In Franks, the United States Supreme Court delineated circumstances in which defendants may challenge a facially valid search warrant. 438 U.S. 154. First, defendants must "[make] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

---

electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

[3]   Defendant also reiterates generally his arguments in support of motion to suppress. Upon careful review of M&R, finding no clear error, the court adopts the magistrate judge's recommendation on the issues raised in the motion to suppress.

affidavit." Id. at 154. Second, defendants must demonstrate that "the allegedly false statement is necessary to the finding of probable cause." Id. at 154. Defendants bear the burden of proof, as there is "a presumption of validity with respect to the affidavit supporting the search warrant." Id. at 171.

Defendants' showing "must be more than conclusory . . . there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be supported by an offer of proof." Id. at 171. "Allegations of negligence or innocent mistake are insufficient. The burden of making the necessary showing is thus a heavy one to bear." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

Moreover, "[w]hen relying on an omission, rather than on a false affirmative statement, [defendant's] burden increases yet more" because a search warrant affidavit "cannot be expected to include every piece of information gathered in the course of an investigation." Id. at 454-455. Indeed, "the very process of selecting facts for demonstration of probable cause must also be a deliberate process of omitting pieces of information." Id. at 455. As such, "intentional omissions do not satisfy the requirement of Franks." Id.

Rather, "to obtain a Franks hearing, the defendant must show that the omissions were designed to mislead, or made in reckless disregard of whether they would mislead." United States v. Clenney, 631 F.3d 658, 664 (4th Cir. 2011) (internal quotations omitted). Additionally, "defendants must show the omissions were material, meaning that their inclusion in the affidavit would defeat probable cause." Id. (internal quotations omitted).

Here, defendant argues he is entitled to a Franks hearing because: 1) Von Hackney's affidavit omitted information from his interview with Ronald in October 2015 and 2) Floyd allegedly saw defendant with a firearm on May 24, 2017, in North Carolina, but defendant claims

5

to have been in New York on that date.

1. Omissions in Von Hackney's Affidavit

Defendant alleges Von Hackney omitted the following information pertaining to his October 2015 interview with Ronald: 1) Ronald confused defendant's name with defendant's brother's name multiple times in the interview, 2) Ronald stated that he did not see defendant shoot a firearm,[4] 3) a third party admitted to decapitating Ronald's buffalo, and 4) Ronald was charged with communicating threats and pointing a gun at defendant. (DE 42 at 10-11).

Defendant alleges Von Hackney "chose to keep [this information] from the issuing judge either intentionally or recklessly knowing that it would have given the judge pause and nullified the probable cause sought." Id. at 11. However, defendant fails to support his conclusory allegation with the requisite offer of proof. At most, defendant has shown Von Hackney "chose" to omit information from the search warrant affidavit, but as the Fourth Circuit explained in Tate, "the very process of selecting facts for demonstration of probable cause must also be a deliberate process of omitting pieces of information." 524 F.3d at 455. Absent evidence that Von Hackney intended to mislead, defendant fails to carry the heavy burden needed to obtain a Franks hearing.

2. Floyd's Alleged Sighting on May 24, 2017

Additionally, defendant alleges Floyd's statement that she saw defendant with a firearm in North Carolina on or about May 24, 2017, is false because he was in New York at that time. (DE 42 at 12). In support, defendant proffers three affidavits. The first affiant, Freeman, attests that defendant took a job in New York in May 2017, and returned to North Carolina at the end of May 2017. (DE 42-8 at 1). The second affiant, Locklear, states that he worked with defendant in New

---

[4] Defendant claims this omission is significant because the affidavit includes Ronald's statement that he saw defendant shoot a pistol in September 2015.

York in May 2017, and they did not return to North Carolina until May 28, 2017. (DE 42-9 at 1). Lastly, in the third affidavit, Thomas Dail attests that he also worked with defendant in New York in May 2017, and he returned with defendant to North Carolina on May 28, 2017. (DE 42-10 at 1).

Assuming without deciding that defendant was in New York on May 24, 2017, and Floyd reported the incorrect date, defendant fails to show Floyd's error was intentional or made with a reckless disregard for the truth. Since allegations of negligent mistakes are insufficient to warrant a Franks hearing, defendant has not carried his heavy burden on this issue.

In sum, defendant has not made the requisite showing that the alleged misrepresentations and omissions in the search warrant affidavit were intentional or made with a reckless disregard for the truth. Therefore, the magistrate judge correctly determined that defendant's request for a Franks hearing must be denied.

## CONCLUSION

Based upon the foregoing, upon de novo review of the M&R, and upon considered review of the record and defendant's objections, the court overrules defendant's objections and ADOPTS the M&R (DE 51). Accordingly, defendant's motion to suppress and defendant's motion for Franks hearing (DE 42) are DENIED.

SO ORDERED, this the 30th day of October, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge